JANUARY TERM, 1883, No. 241. MARCH 27, 1883.

# Young's Appeal.

1. The fact that each of the complainants has sustained the same kind of an injury is not sufficient to authorize them to file a joint bill, where the cause of complaint is separate and distinct.

2. Where a bill disclosed that its principal object was to recover damages for an alleged fraud in making the contract, it was properly dismissed, since the complainants had a full, complete, and adequate remedy at law.

3. A prayer for a rescission of the contract, upon the ground of fraud and conspiracy, does not relieve the bill from the fatal consequences of no joint cause of action.

Before MERCUR, C. J. ; GORDON, PAXSON, TRUNKEY, and GREEN, JJ.

Appeal of William Young, William B. Young, and Benjamin Franklin Young from a decree of the Court of Common Pleas, No. 2, of *Philadelphia County*, dismissing a bill in equity, filed by them against James T. Reber, George G. Heilman, Samuel Berrett, Thomas Brown, James Koch, Joseph Coblentz, Adam Bard, Charles Henninger, Adam Funck, and Henry Mosser.

[Young's Appeal.]

The bill averred that in November, 1881, and for some time prior thereto, the defendants were the owners of four hundred and forty-six shares of the capital stock of The Pennsylvania Graphite Mining and Manufacturing Company, held by them in certain proportions therein stated; that the said company was incorporated in 1876, under the laws of the State of Pennsylvania, with a capital stock of five hundred shares of $100 each, its object being the mining and manufacture of graphite, upon property owned and leased by it at Byer's station, Chester county, Pennsylvania; that during November, 1881, and for some months before, the said defendants, through five of their number, the said Reber, Berrett, Henninger, Koch, and Coblentz, entered into negotiations with complainants for the purchase of the said four hundred and forty-six shares of stock owned by them, and as an inducement for the purchase thereof, represented to complainants that the business of the company was in a most prosperous condition, and then paying large dividends; that the deposit of ore upon the company's property was unlimited, and could not be worked out; that the veins upon the property were rich and productive, yielding and producing the best quality and character of graphite; that the price realized from the sale of the manufactured product so largely exceeded the cost of its manufacture that it was a most successful enterprise, and that large profits were resulting, and would still result, from the same; that the supply of the graphite, as manufactured in this property, was not equal to the demand for the same; that there was always a cash market for it; and that all graphite manufactured at the works had been, and could be, sold for cash to J. H. Gautier & Co., of Jersey City.

That the said month of November, 1881, and during said negotiation, the said Reber, Berrett, and Henninger, for themselves and on account of the other defendants, visited the said mines and manufactory of the said company with complainants, and as a peculiar inducement for the purchase of the said stock thus represented, for themselves and in behalf of the other defendants, that the manufactory was in good and complete working order; that new machinery had been introduced, which had increased the facilities for business; that the company was then in a condition for the successful and profitable operations of its business, and that the vein of ore then being worked was one of the best veins that had been found upon the premises; that the process of manufacture was easily understood, and in the care and manage-

ment of one —— Ruth as the foreman of the company's works ; and that in case of the purchase of the stock they would give complainants all the instructions and information necessary for the proper management of the business ; that complainants, relying upon these representations of defendants, induced thereby and having no other sources of information as to the same, concluded the purchase of the said stock with said defendants for the sum of $51,980 00, and paid them in different amounts, according to the respective number of shares owned by each of them, the sum of $51,980.

The sixth averment of the bill is as follows :

. "That the purchase of said stock was finally concluded with said Funck on twenty-first day of December, 1881, with the said Reber, Berrett, Bard, Heilman, Coblentz, and Mosser, on the third day of December, A. D. 1881, with said Brown and Koch on the second day of February, A. D. 1881, and with said Henninger on the twenty-fifth day of February, A. D. 1882, that said stock was assigned to your orators in equal third parts by the said defendants respectively, who received from your orators the aforesaid sums of moneys therefor in cash, amounting to the said sum of $51,980, excepting that the said Berrett received three promissory notes therefor, for the sum of $1,146 37 each ; one of which was drawn by William Young, one of your orators, to the order of said Berrett, and the two remaining notes were drawn by William B. Young and Benjamin Franklin Young respectively, and indorsed by said William Young to said Berrett, due September 1, 1882, and excepting that said Thomas Brown received three certain promissory notes, two of them for the sum of $1,540 each--one of them made by William Young, one of your orators, to the order of said Brown, and the other of these notes by William B. Young, one of your orators, drawn to the order of said William Young, and indorsed by him to the said Brown, due February 3, 1883, and one of the notes of B. F. Young to the order of William Young, indorsed by and to the said Brown, due February 3, 1883, and excepting that said James Koch received the promissory note of B. F. Young, one of your orators, to the order of William Young, one of your orators, for the sum of $1,100, due February 3, 1883, and excepting that said Henninger received two promissory notes of B. F. Young, one of your orators, to his own order, for the sum of $500 each, due August 25, 1882 ; also a promissory note for

the sum of $700, due November 25, 1882, and also another promissory note for $500, due February 25, 1883.''

The seventh paragraph of the bill sets forth that the complainants had assumed the management of the corporation business and expended $8,000 in the manufacture of graphite from the product of its property without effect; that complainants had discovered and averred that the various representations made to them by defendants were false and fraudulent; that defendants, though requested, had refused to give complainants any information relative to the working of the said mines and the manufacture of their product. The bill also averred that the defendants and each and all of them had, at the time of the negotiation and sale of the stock as aforesaid, knowledge of the statements and representations as aforesaid that were made to complainants, which induced the purchase thereof, and that the same were false, fraudulent, and untrue; that they knew each and all of them at the same time had knowledge that the said business of the said company was not in a prosperous condition; that no dividends had been paid for the said period of two years preceding said sale; that the property of said company did not contain deposits of sufficient quantity for a successful management of its business; that the veins then upon the property contained ore of an inferior quality, which produced an inferior article of manufacture and utterly unmarketable.

It then prayed:

(1.) That the contract of sale be decreed null and void. (2.) That the defendants and each and every of them be decreed to return all moneys paid to them by the plaintiff as the purchase money of the stock with interest thereon. (3.) That the defendants and each of them be enjoined from using, indorsing, or disposing of the promissory notes given and indorsed by the plaintiffs or either of them as the purchase money of the stock. (4.) That the defendants and each of them be decreed to surrender, release, and deliver unto the plaintiffs the said promissory notes and each and every of them. (5.) That the defendants and each and every of them be decreed to pay unto the plaintiffs the sum of $8,000, paid and expended by them in the management of the business of the said company, or make restitution.; and (6.) General relief.

The defendants demurred, specifying, *inter alia*:

*First.* The complainants have a full, adequate, and complete remedy at law.

*Second.* The statement of the case in the bill does not

disclose any joint liability on the part of the defendants. The liability, if any, upon the facts stated in the bill, is several.

*Fourth.* The bill does not aver that the complainants jointly purchased the stock; on the contrary, the facts as stated in paragraph VI of the bill show that it was an individual purchase by each of the complainants, and hence the complainants have no joint title to the relief prayed.

*Eighth.* Because relief is prayed against all the defendants jointly in respect of promissory notes held by, and sums of money received by, them, or some of them, individually.

After hearing on bill and demurrer, the Court entered a decree sustaining the demurrer and dismissing the bill without prejudice. The complainants thereupon took this appeal, assigning for error the entering of the above decree.

*William Henry Lex* and *Samuel Wakeling* for appellants.

Equity has full jurisdiction by reason of the fraud complained of: Evans *v.* Bicknell, 6 Ves., 174; Blair *v.* Bromley, 2 Ph., 354; Adams on Equity, page 350; McElhenny *v.* Hubert Oil Co., 11 P. F. S., 188.

It will rescind the contract, replace the parties in the same position as they were before, and decree a restoration: Bispham's Equity, pages 199, 201, 207, 208.

As to the second and fourth causes of demurrer:

The bill avers that at the time of the negotiation and sale of the stock, a conspiracy and unlawful combination existed on the part of the defendants to deceive and defraud the plaintiffs. It avers that all of them had knowledge of the representations made; that they were made by them and in their behalf; that they induced the purchase; that they were false and untrue; and that Reber, Berrett, Henninger, Koch, and Coblentz acted on behalf of all at the time of the representations and negotiations; and that Reber, Berrett, and Henninger, on behalf of all, visited the mines with plaintiffs, and made the representation of fraud as charged. All of the stock was sold under the same negotiations, and by the same representations, and the sale of it was concluded about the same time. The stock was sold by each defendant under the contract, and they each assigned their respective shares to each of the plaintiffs in equal third parts. All were paid in the same manner, showing a common intent and joint action. Consequently, all parties are liable for the

[Young's Appeal.]

full extent of the fraud practiced which induced the purchase. They are responsible for the false representations made, even if they had no interest in the deception : Weed *v.* Case, 55 Barb., 547, Note to Bispham's Equity, page 207.

As to the joinder of all the parties, they are all entitled to be joined, as the cause grew out of the same transaction, where both plaintiffs and defendants were interested in the same right, and the relief sought is of the same general nature. In this case there was no distinct, independent, and separate causes of complaint requiring different defenses and different decrees : Cumberland Valley Railroad Company's Appeal, 12 P. F. S., 218 ; Young *v.* Allegheny Oil Company, 10 Phil., 525 ; Calvin on Equity, page 2.

The duty of restoring the stock and of surrendering the notes is therefore a joint one.

As to the eighth cause of demurrer :

All the defendants having derived a benefit from the plaintiffs through the false representations inducing the purchase of the stock, and all knowing that such representations were false, and that the notes had, given, and indorsed, for part of the purchase money, all are entitled to be decreed to surrender the notes, and protect the plaintiffs from all injury by reason thereof.

*P. F. Rothermel, Jr., George F. Baer,* and *George Tucker Bispham* for appellees.

It is submitted that it is well settled in both England and in this country that such a bill as this will not lie for the reason that the plaintiff has a full and adequate remedy at law : Mackintosh *v.* Tracy, 4 Brewster, 59 ; Patterson *v.* Lane, 11 Casey, 275 ; Ambler *v.* Choteau, 1 Supreme Court Reporter, 556. The rule is the same in England : Newham *v.* May, 13 Price, 749, and has been recognized in this country : Russell *v.* Clark, 7 Cranch, 69 ; Hardwick *v.* Forbes, 1 Bibb., 212 ; Woodman *v.* Freeman, 25 Maine, 531.

Nor is it clear from the statement of complainants' case in the bill that there is any joint liability whatever. The facts show a several liability. The bill states that the stock was owned individually ; that the negotiations, though begun by some on behalf of all, concluded with the owners as individuals ; that the terms of purchase with the various owners varied as to price ; that the contracts were consummated at different dates ; and that when negotiable securities were given, they were given to the individual owners and not to the defendants jointly.

[Quick *v.* Van Auken.]

APRIL 9, 1883.—PER CURIAM: We think the evidence fails to disclose any joint cause of action in the appellants. The cause of complaint is shown to be separate and distinct in each. It is not sufficient that each has sustained the same kind of injury. This does not authorize them to file a joint bill. The principal object of this bill is to recover damages for an alleged fraud in making the contract. To recover these the appellants have a full, complete, and adequate remedy at law. The prayer for a rescission of the contract does not relieve the case from the fatal consequence of no joint cause of action in the appellants.

Decree affirmed, and appeal dismissed at the costs of the appellants.